## PACIFIC MUT. LIFE INS. CO. v. FELDMAN.

### No. 7477.

Circuit Court of Appeals, Sixth Circuit.

June 6, 1938.

Rehearing Denied Oct. 13, 1938.

Neil P. Beall, of Cleveland, Ohio (Mc-Keehan, Merrick, Arter & Stewart, George William Cottrell, and Neil P. Beall, all of Cleveland, Ohio, on the brief), for appellant.

Wm. C. Keough, of Cleveland, Ohio (Mooney, Hahn, Loeser, Keough & Fulton and Wm. C. Keough, all of Cleveland, Ohio, on the brief), for appellee.

Before HICKS and SIMONS, Circuit Judges, and NEVIN, District Judge.

HICKS, Circuit Judge.

Suit by appellee to recover disability benefits provided in certain clauses of a life insurance policy issued to him by appellant on November 14, 1922. The provisions follow:

"Permanent Total Disability Benefit

"Should the Insured, before attaining the age of sixty years and while this policy

is in full force and no premium thereon in default, become so disabled as to be totally and permanently unable to perform any work or engage in any occupation or profession for wages, compensation or profit, or suffer the irrecoverable loss of the entire sight of both eyes, or the use of both hands or feet, or of one hand and one foot, the Company will waive the payment of future premiums and pay the Insured . . . Two Hundred Fifty . . . Dollars immediately on receipt of due proof of such disability or loss and a like sum on the first day of each month thereafter as long as the Insured shall live, and such waiver of premiums and payments to the Insured shall not affect any other benefits or values granted under the conditions of the Policy, provided, however, as follows:

"Should the Insured at any time thereafter, when required by the Company, (such requirement, however, not to be exacted more frequently than once a year), be unable to furnish due proof of the continuance of his right to the foregoing benefits, the Company will discontinue the same and require the payment of any premiums which may thereafter become due under the conditions of the Policy, but no reimbursement shall be required for any premiums waived or monthly payments made. * * *"

Appellee produced evidence that for a number of years prior to 1934, he had experienced rapidly declining vision, due to cataracts in each eye. His work was primarily that of a plumbing contractor, necessitating minute study of building plans, careful measurements of buildings for placement of fixtures, and much close figuring of prices of fixtures, labor, etc. As a side line, he was interested in three small apartment houses, but was unable on account of the condition of his sight, to look after their repair, etc., for a period of about three years.

In December 1933, he was examined by Dr. Shiras, a specialist, who reported a 93⅓% loss of vision in his right eye and 80% in his left. On April 18, 1934, he presented his proof of claim, under the provision of the policy involved, and sought at the time of the trial to recover the sum of $250.00 a month from that date until December 30, 1935.

At the close of appellee's evidence each party moved for a directed verdict. The court overruled appellant's motion and directed a verdict in favor of appellee. We think this action was erroneous.

The contract was that the benefits were to be paid to the insured as long as he should live upon *proof* that he had "become so disabled as to be totally and permanently unable to perform any work or engage in any occupation or profession for wages, compensation or profit. * * *"

It is manifest that on April 18, 1934, appellee was "totally" disabled but the question presented is whether there was substantial evidence that he was "permanently" so.

The cases are by no means uniform in their rulings upon the meaning of the terms "permanently" or "permanent disability" when used in such "permanent total disability benefit" clauses, but we find no reason to enter into a particular discussion of them.

If we should assume that appellee's total disability on April 18, 1934, in and of itself, carried a substantial inference that it was also permanent, we are met with certain undisputed evidence which we regard as a complete refutation of such inference, regardless of any particular meaning that might be attributed to the word "permanent." Appellee testified as to his disability that "that condition continued until I got my glasses on December 30th." He made no claim for benefits after that date. Dr. Shiras testified that he operated upon appellee's right eye in November 1935. He stated:

"When he had been fitted with the eyeglass for the right eye that restored to normal the vision in the right eye when he was using the eye-glass. * * * But with the use of the eye-glasses fitted to him on December 30, 1935, he has normal vision. * * *

"When I concluded my operation on his right eye and at this time, he has a good useful vision of the normal person in the right eye while using glasses. I see no reason for any change in that condition."

Appellee testified:

"I have an arrangement now that as soon as I put the plumbing business in better business, I am going to draw money out of the business. I have a half dozen jobs right now. I am still getting $40 per week from the building company. I do not get any weekly or monthly amount from the biscuit distributing company now.

"I am doing more work now in connection with the apartment house than I did in the year 1935. I am painting all my

buildings now; I am doing a lot of repairs that was neglected for the last couple of years. I have painters working; I have a brick-layer working on the west side; I have a lot of things I am taking care of right now. I have been doing that since the first of the year; the last couple of months.

"As to the plumbing company there is a change in the character of work I am doing. I have got the May Company job; I have got the Grabler Manufacturing job; I have the Multigraph contract; I have got about seven or eight jobs, I have got. I read from blueprints and specifications on those jobs; *I am very active in the plumbing business right now.*" (Italics ours.)

Finally, the record contains this statement to the jury by appellee's counsel: "So, we are not making any claim after the 30th of December, 1935, as far as his infirmity, his disability, is concerned. We admit that on the 30th day of December 1935 he was no longer permanently disabled, because the sight of one eye was restored to him and he was not then totally disabled within the terms of the policy. * * *"

We think that the evidence taken as a whole admits of only one conclusion, to wit, that as a matter of law appellee did not become permanently disabled within the contemplation of the contract. The most that may be said for him, is that he was temporarily disabled from April 18, 1934, to December 30, 1935, or for a period of a little over twenty months. Appellee's motion for a directed verdict should have been denied and that of appellant granted.

The judgment is reversed and the case remanded for a new trial.