FIREMEN AND POLICEMEN'S PENSION FUND BOARD OF TRUSTEES OF SAN ANTONIO, Texas, Appellant,

v.

Mike VILLAREAL, Appellee.

No. 14728.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 31, 1968.

First Motion for Rehearing Overruled Feb. 12, 1969.

Second Rehearing Denied March 12, 1969.

Harvey L. Hardy, San Antonio, for appellant.

Southers, Mendelsohn, Goldberg & Lyons, Galindo & Gibson, San Antonio, for appellee.

BARROW, Chief Justice.

This is an appeal from a judgment of the trial court holding that the decision of appellant, Firemen and Policemen's Pension Fund Board of Trustees of San Antonio, Texas, hereinafter referred to as Board, denying appellee, Mike Villareal, pension benefits was arbitrary, illegal and capricious. The judgment set aside the Board's order and directed it to pay appellee a disability pension pursuant to the provisions of Art. 6243f, Vernon's Ann.Civ.St.

Both parties agree that the substantial evidence rule applies here. See Board of Firemen's Relief & Retirement Fund Trustees of Houston v. Marks, 150 Tex. 433, 242 S.W.2d 181, 27 A.L.R.2d 965 (1951); Firemen & Policemen's Pension Fund Board of San Antonio v. Guerrero, 395 S. W.2d 397 (Tex.Civ.App.—San Antonio 1965, writ ref'd n. r. e.); Collins v. Board of Firemen, etc., Pension Fund Trustees of San Antonio, 319 S.W.2d 174 (Tex.Civ. App.—San Antonio 1958, writ ref'd). The question to be determined by this appeal is whether the Board's finding that the medical evidence did not show that appellee was totally and permanently disabled is reasonably supported by substantial evidence.

The evidence is largely stipulated or undisputed. Appellee was a duly appointed and enrolled member of the San Antonio Fire Department and a contributing member of the Pension Fund since 1951. On June 5, 1966, he sustained an off-duty injury to his right hand which resulted in disability, continuous and wholly incapacitating, for a period of at least ninety-one days prior to filing his application for disability. Immediately after the accident, appellee was hospitalized for a period of about two weeks. A tendon graft operation was subsequently performed on his hand on September 27, 1966, requiring an additional ten-day hospitalization. Following this treatment, appellee's right little finger is stiff to where he cannot make a fist, and he has very little feeling in it. Although appellee tried to work for a short period between the two operations, the unanimous opinion of the four doctors who treated or examined appellee, as well as that of Fire Chief Rogers, was that he is unable to perform the duties of a fireman in his present condition. It is the recommendation of these doctors that this little finger should be amputated. Although none of the doctors were willing to make a guarantee, their unanimous opinion was

that such a procedure is a relatively simple, painless and safe operation which could be performed under a local anesthetic and, after about a month, appellee would be fully able to perform the duties of a fireman. Appellee has refused to undergo such surgery, either because of a lack of confidence in the result, a fear of an amputation, or lack of funds for the operation and subsequent convalescence.

Appellant Board concedes that the statute does not give it the authority to order an operation and it does not claim the right to do so, but urges that a disability is not permanent which can be cured by standard medical treatment without any appreciable risk to the member. We have been cited to no authority and have found none in this or any other jurisdiction in which this problem has been considered in regard to a pension act.

There are other types of cases which recognize this problem. In tort cases the universal rule is that an injured person cannot recover damages which can be avoided by that care and treatment of his injury which an ordinary prudent person would exercise in the same or similar circumstances. Moulton v. Alamo Ambulance Service, Inc., 414 S.W.2d 444 (Tex.Sup. 1967). The rule to be applied in tort cases is usually distinguished from that to be applied in suits brought on a contract or under a statute.

Under an insurance policy providing benefits if the insured should suffer the "entire and irrecoverable loss" of sight of both eyes, it was held that the insured could not recover if an ordinary prudent person under such circumstances would undergo an operation for removal of the cataracts. Southland Life Ins. Co. v. Dunn, 71 S.W.2d 1103 (Tex.Civ.App.—El Paso 1934, writ dism'd). In this case the Court said:

> "An entire loss of the use of a limb or organ of the body, which loss may be completely or substantially recovered, regained, or remedied, by proper medical or surgical treatment and which treatment would be undergone by an ordinarily prudent person under the same or similar circumstances, is not to be justly considered as an irrecoverable entire loss."

Under the weight of authority in other jurisdictions, an insured is not denied recovery of benefits under disability insurance policy because he had not submitted to a surgical operation, except in a few instances where the injuries and operations recommended were of minor consequences and the risks involved slight. Annotation: 126 A.L.R. 136; Cody v. John Hancock Mut. Life Ins. Co., 111 W.Va. 518, 163 S. E. 4, 86 A.L.R. 354, 1932; Mutual Life Ins. Co. of New York v. Knight, 130 Fla. 733, 178 So. 898, 1937; Kordulak v. Prudential Ins. Co., 15 N.J.Misc. 242, 190 A. 325, 1937; Pacific Mut. Life Ins. Co. v. Matz, 81 P.2d 775; Tenth Cir. 1940; Mutual Life Ins. Co. of New York v. Ellison, 223 F.2d 686, Fifth Cir. 1955.

Title 20 C.F.R. § 404.1502(g) of the United States Social Security Act provides: "An individual will be deemed not under a disability if, with reasonable effort and safety to himself, the impairment can be diminished to the extent that the individual will not be prevented by the impairment from engaging in any substantial gainful activity." The judicial construction of this section turns on such factors as the risk involved in the suggested treatment, the pain and discomfort resulting therefrom, the chances that the disability will be removed, and the claimant's fear of the operation, as well as the expense of the suggested treatment. Annotation: 11 A. L.R.3rd 1134; Ratliff v. Celebrezze, 338 F.2d 978, Sixth Cir. 1964.

■ Art. 8306, §§ 12b and 12e, Vernon's Ann.Civ.St., established procedures whereby, in proper circumstances, an injured employee seeking benefits under the Workmen's Compensation Act may be required to submit to curative surgical procedures or suffer a limitation or suspension of

compensation benefits. The statutory provisions are strictly enforced against the compensation carrier before an injured employee is penalized for refusing to submit to surgery. Houston Fire & Casualty Ins. Co. v. Dieter, 409 S.W.2d 838 (Tex.Sup. 1966); Truck Ins. Exchange v. Seelbach, 161 Tex. 250, 339 S.W.2d 521 (1960).

The rights and duties of both parties herein are entirely controlled by the statutory provisions in this Act. Section 10 thereof provides that when a member "shall become so permanently disabled through injury or disease so as to incapacitate him from the performance of his duties" he shall be retired, provided only that said disability shall have been continuous and wholly incapacitating for a period of over 90 days before the application was filed. The parties stipulated that appellee met this condition precedent. Although said act authorizes the Board to require the member to submit to a medical examination, which was done in this case, there is no provision similar to that contained in the Texas Workmen's Compensation Act or in the United States Social Security Act requiring the claimant to submit to medical treatment or surgery. On the other hand, the Legislature has made a unique provision in these statutory pension plans for medical examinations subsequent to an adjudication of permanent incapacity for the purpose of determining if there has been a change in the degree of claimant's disability with the right to adjust or terminate the pension accordingly. See § 15, supra; Firemen & Policemen's Pension Fund Board of San Antonio v. Guerrero, supra. Therefore, if claimant should subsequently have his finger removed or learn to work with it, his pension rights could be adjusted.

██ Since the Board was not given the power to order appellee to submit to an operation for amputation of his finger, it follows that the Legislature did not intend for the Board to have the power to penalize him for his failure to do so. Under the stipulation and undisputed facts, appellee has been totally disabled from performing the duties of a fireman for more than the required period to establish a claim for permanent incapacity. Furthermore, the medical evidence is conclusive that he has made maximum recovery, and this condition is permanent unless the finger is amputated. Since the Board has no authority to require such surgery, the condition is permanent under the undisputed evidence. Therefore, there is no substantial evidence in the record to support the Board's finding that said disability is not permanent.

The judgment of the trial court is affirmed.

### On Motion for Rehearing

Much is said in appellant's motion for rehearing to the effect that appellee has only a stiff little finger. It must be remembered that appellant conceded, both in the trial court and in this Court, that although appellee has made maximum improvement after a tendon graft was performed in September, 1966, during appellee's second hospitalization for that injury, he is unable to perform the duties of a fireman in his present condition. Such concession is based on the unanimous opinion of the four doctors who examined or treated appellee and the testimony of the fire chief.

Much can be said, both pro and con, concerning the desirability of statutory authority to require a pension claimant to submit to the treatment of his injury which an ordinary prudent person would follow in the same or similar circumstances. The fact remains, however, that the Legislature has not given appellant this authority. It must follow that in the absence of such power the Board is not authorized to, in effect, penalize appellee by declaring that although it does not care if he has the finger amputated or not, he will be considered as not permanently disabled unless the surgery is undertaken and is not successful. We do not believe the Legislature intended a pension claimant to be put to such an election.

The basic answer to the question before us is that, since appellee has been admittedly totally disabled from performing the duties of a fireman for more than the required 91 days and has made maximum improvement, he is permanently disabled within the meaning of said Act. In re Gilbert, 165 Misc. 222, 300 N.Y.S. 790. Should this condition change, provision is made under said Act for readjustment of appellee's pension.

Appellant's motion for rehearing is overruled.